UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH FALCONE, individually and on behalf of similarly situated employees and JASON EVERS, individually and on behalf of similarly situated employees,

    Plaintiffs,

v.    Case No: 2:19-cv-303-FtM-29MRM

TOP 1 PERCENT COACHING, LLC, a Florida limited liability company and JUSTIN T. FOXX, individually,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on defendants Top 1 Percent Coaching, LLC (Top 1%) and Justin T. Foxx (Foxx) (collectively "Defendants") Motion to Compel Arbitration and to Stay or Dismiss Claims (Doc. #17) filed on January 10, 2020. Plaintiffs filed a Response (Doc. #23) on February 14, 2020. For the reasons set forth below, the motion is granted.

Top 1% is a business that sells wealth coaching and consulting services throughout the world. Justin Foxx is the managing member and CEO of Top 1%. On May 6, 2020, Plaintiff Joseph Falcone, individually and on behalf of similarly situated employees ("Falcone") and Jason Evers, individually and on behalf of

similarly situated employees ("Evers") filled a two-count Complaint (Doc. #1) against defendants Top 1% and Justin T. Foxx alleging claims under the Fair Labor Standards Act (FLSA), 29 U.S.C § 201, et seq. The Complaint alleges that Defendants violated 29 U.S.C. § 206 by failing to pay minimum wages, and violated 29 U.S.C. § 207(a) by failing to compensate for the overtime hours employees worked at a rate of one and one-half times their regular rate of pay. (Doc. #1, ¶¶ 6-8.) More specifically, plaintiffs allege that Defendants required or permitted them to work in excess of 40 hours per week but refused to pay overtime, and further failed to compensate plaintiffs on a salary basis. Plaintiffs' Complaint also makes claims that Defendants have a long-standing policy of misclassifying their employees as independent contractors. (Doc. #1, ¶ 4.)

Defendants argue that Top 1% Coaching requires all "coaches" to sign an Independent Agent Agreement (Doc. #17-2) prior to having access to its client database and materials, which includes a confidentiality clause and an arbitration clause. (Doc. #17, p. 7.) The Independent Agent Agreement contains the following arbitration clause:

> DISPUTE RESOLUTION. Any dispute arising out of or relating to this Agreement, its negotiations, execution, performance, or breach ("Disputes") Shall be determined by final and binding arbitration administered by the American Arbitration Association (the "AAA") to be held in Fort Myers, Florida, USA, and each party hereby consents hereto. This Agreement will be governed and finally settled

>by the laws of Florida, United States. The decision of the arbitrator will be final and binding upon the parties and judgment on the award may be entered in any court of competent jurisdiction. One arbitrator will preside over the arbitration. The parties will cooperate with each other in selecting the arbitrator from a panel of neutrals and in selecting the arbitrator from a panel of neutrals and in scheduling arbitration proceedings. The arbitrator will conclusively resolve any discovery dispute. The arbitration award will be in the form of a written, reasoned opinion that includes findings of fact and conclusions of law. Except as required by law without the possibility of waiver, the arbitrator may not award punitive, indirect, consequential or specific damages and the parties waive their right to a jury. No claim subject to this provision may be brought as a class or collective action and Agent may not assert such a claim as a member of a class or collective action that is brought by another claimant.

(Docs. ## 17-2, 17-3, at ¶ 21.) The Independent Agent Agreement also classifies the two plaintiffs as "Independent agents."

>Independent agent ("Agent"). Subject to the terms and conditions of this Agreement, Company Hereby engages Agent as an Independent Agent to perform the services set forth herein. This Agreement nor the work contemplated hereunder shall not render Agent an employee, partner, agent of, or joint venturer with the Company for any purpose. Agent is and will remain an independent Agent in their relationship with Company.

(Docs. # 17-2, 17-3, at ¶ 1.)

Defendants have filed a motion seeking to compel arbitration based on the Independent Agent Agreement, and assert that they are already in the mist of arbitration with the American Arbitration Association. Plaintiffs respond that neither of them executed an

Independent Agent Agreement with an arbitration provision. (Doc. #23, ¶ 8.) Plaintiffs also disagree with the notion that they are independent agents, and assert that they were in fact employees of Top 1% whose employment was governed by the FLSA. (Doc. 1 at ¶ 4). This claim is based on the nature of the work that plaintiffs provided for Top 1%, including but not limited to coaching only Top 1% students, appointing certain students to each coach, prohibiting plaintiffs from coaching for other organizations, and setting scheduling requirements for plaintiffs. (Doc. #1 at ¶¶ 19-60).

**II.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, applies to the agreement between Top 1% and the plaintiffs because Top 1% is engaged in interstate commerce. See Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265, 273-74 (1995). The FAA was enacted in order to ensure the "enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceeding." Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1330 (11th Cir. 2014). The FAA provides that any dispute arising out of a contract that has a written agreement to arbitrate "[s]hall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1231 (11th Cir. 2012). The FAA creates "a presumption of arbitrability such that any doubts concerning the

scope of arbitrable issues should be resolved in favor of arbitration." Bazemore v. Jefferson Capital Sys., LLC, 827 F.3d 1325, 1329 (11th Cir. 2016). Although the scope of an arbitration clause should be resolved in favor of arbitration, the same reasoning does not apply to disputes concerning whether an agreement to arbitrate has been made. Id. Deciding whether an arbitration agreement exists at all is "simply a matter of contract." Id. Absent such an agreement the court cannot compel a party to arbitrate. Id.

The threshold issue in this case is whether there exists an agreement between plaintiffs and Top 1% to arbitrate disputes related to the Independent Agent Agreement. Falcone asserts that he had not signed the Independent Agent Agreement upon hire and should not be held to its arbitration clause. (Doc. #22-1, p. 21). Plaintiff, Evers, asserts that he executed an Independent Agent Agreement with an arbitration provision as President of, and on behalf of, his corporation, Clarity Coaching & Consulting, Inc., but not individually. (Doc. #22-2, p. 90.)

**A. Joseph Falcone**

Falcone argues that there is no valid arbitration agreement because he did not execute the "Independent Contractor Agreement" and therefore did not agree to its terms. (Doc. #23, ¶ 9.) On October 6, 2015, Falcone received the Independent Agent Agreement from Top 1%'s representative via email and returned the agreement via email with his name printed on the signature line of the

agreement, a void check, banking information, and a W-2 Form. Falcone argues that he did not type his name above the signature line and that he does not know who did. Falcone claims that he did not sign the document, and that he would not have printed his name on the signature line, but instead would have signed with Adobe Autofill. (Doc. 22-1, Exh. 11, pp. 82-90.) The text of the email provided by Falcone with the attached documents, required to begin employment, reads "Please find signed documents attached, as well as below requested info". (Doc. #22-1, p. 82.)

While the FAA requires that an arbitration agreement be in writing, it does not require that it be signed by the parties. <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359, 1369 (11th Cir. 2005)(employees accepted dispute resolution policy by continuing employment). There is no dispute that the Independent Agent Agreement is a written document, that Falcone was aware of the Independent Agent Agreement, and that the Independent Agent Agreement needed to be agreed to in order to begin work with Top 1%. An arbitration agreement is accepted when one continues or accepts employment. <u>See id.</u> at 1369-1370. Falcone worked with Top 1% after receiving the Independent Agent Agreement via email, and he received payment for his work, as detailed by the issued checks. (Doc. #22-1, p. 92.) Falcone attached the requested documents, including the Independent Agent Agreement, and typed the statement "Please find signed documents attached, as well as below requested

info." Therefore, defendants have established that Falcone agreed to arbitrate the disputes at issue in this case.

**B. Jason Evers**

Jason Evers asserts that on January 19, 2015, he signed an Independent Agent Agreement with an arbitration clause, but he did so on behalf of a separate entity, Clarity Coaching and Consulting, Inc. Evers asserts that Clarity Coaching and Consulting, Inc. is identified beneath his signature, which contains his title as President, as well as an additional signature of the COO of this separate entity. (Doc. #17-3, p. 7.) Evers argues that this establishes that he signed the agreement in the capacity of a corporate officer, and did not obligate himself in his personal capacity.

The clear indication from the signature block is that Evers' intended to sign the Independent Agent Agreement on behalf of and in the capacity of a corporate officer for Clarity Coaching and Consulting, Inc. This, however, is not the end of the inquiry. The Court must look to the language of the contract for any indication of personal liability or the assumption of personal obligation. See M & T Credit Servs., LLC., v. Greydinger, No. 2:12-cv-393-FTM-29DNF, 2014 WL 6476211, at *2 (M.D. Fla. Nov. 19, 2014) ("Language identifying the person signing the document as a corporate officer or something similar, does not create personal liability for the person signing a contract to which he or she is not a specified party, unless the contract contains language

indicating personal liability or the assumption of personal obligations." (citations omitted)).  When looking at the language of the contract, the Court should identify the intended parties to be bound by the contract, who is expected to execute the contract, and the obligations and promises of the parties described throughout the contract including job descriptions.  See id.; Johnson v. Pires, 968 So. 2d 700, 701 (Fla. 4th DCA 2007); Fairway Mortg. Solutions, Inc, v. Locust Gardens, 988 So. 2d 678, 681 (Fla. 4th DCA 2008).

The Independent Agent Agreement states on its first page that the agreement is between "Top 1 Percent Coaching, LLC, a Florida Limited Liability Company and its affiliates ("Company"), and Jason Evers, ("Agent")."  (Doc. #17-3, p. 1.). The Agreement states the execution of the contract is under the sole discretion of the listed agent, and that agent is identified as Evers. (Doc. #17-3, p. 2.) Evers accepted the role of agent described in the Agreement, performing the duties under the contract and accepting payment for his work.  Evers personally performed the obligations and promises listed throughout the Independent Agent Agreement by acting as a coach, a speaker, and in sales for Top 1%. (Doc. #22-2, p. 13.)  By doing so, Evers has accepted the terms of the arbitration agreement by his continued employment with Top 1%. Caley, 428 F.3d at 1369.  See also Robert C. Malt & Co., v. Carpet World Distribs., In., 763 So. 2d 508, 510 (Fla. 4th DCA 2000) (Finding a corporate officer personally liable per a guaranty

- 8 -

provision by expressly identifying the officer as the guarantee) Therefore, the contract contains language that establishes personal liability to Jason Evers.  The Court finds that Jason Evers is personally bound by the arbitration provision.

Accordingly, it is hereby

**ORDERED:**

Defendants' Motion to Compel Arbitration and to Stay or Dismiss Claims (Doc. #17) is **GRANTED.**  The case is **stayed** pending completion of arbitration and notification by the parties that the stay is due to be lifted.  The Clerk shall terminate all pending deadlines and administratively close the case.

**DONE and ORDERED** at Fort Myers, Florida, this __6th__ day of July, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of Record